UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHERYL JAMES and SANDRA DENTON, p/k/a SALT-N-PEPA,<br><br>Plaintiffs,<br><br>v.<br><br>UMG RECORDINGS, INC., a Delaware corporation doing business as Universal Music Group,<br><br>Defendant. | No. 1:25-cv-4182-DLC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT UMG RECORDINGS, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Plaintiffs Cannot Establish the Existence of a Terminable Grant .......... 2

II. There is No Right to Terminate the Derivative Work Remixes .......... 6

III. Plaintiffs Fail to State a Plausible Conversion Claim .......... 8

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Cases** **Pages**

*ABS Entm't v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ....................8

*BTE v. Bonnecaze*,
43 F. Supp. 2d 619 (E.D. La. 1999) ....................7

*Cmty. for Creative Non-Violence v. Reid*,
846 F.2d 1485 (D.C. Cir. 1988) ....................10

*Douglas v. Abrams Child. Books*,
2014 U.S. Dist. LEXIS 201829 (S.D.N.Y. Sept. 26, 2014) ....................9

*Greenfield v. Phillies Records, Inc.*,
98 N.Y.2d 562, 750 N.Y.S.2d 565 (2002) ....................3

*Griffin v. J-Records*,
398 F. Supp. 2d 1137 (E.D. Wash. 2005) ....................6, 7

*Kembrooke Fabrics, Inc. v. Soho Fashions, Inc.*,
1989 U.S. Dist. LEXIS 11588 (S.D.N.Y. Oct. 2, 1989) ....................10

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
2004 U.S. Dist. LEXIS 15668 (S.D.N.Y. Aug. 9, 2004) ....................4

*Maljack Productions v. UAV Corp.*,
964 F. Supp. 1416 (C.D. Cal. 1997) ....................7, 8

*Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*,
907 F. Supp. 2d 401 (S.D.N.Y. 2012) ....................2

*Radio Today, Inc. v. Westwood One, Inc.*,
684 F. Supp. 68 (S.D.N.Y. 1988) ....................9

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
13 N.Y.3d 398 (2009) ....................5

*Sanborn Libr. LLC v. Eris Info. Inc.*,
No. 19-2049, 2024 U.S. Dist. LEXIS 76134 (S.D.N.Y. Mar. 25, 2024) ....................2

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
7 F.3d 1091 (2d Cir. 1993) ....................5, 6

*Sporn v. MCA Records*,
58 N.Y.2d 482 (1983) ....................9

*State v. Seventh Regiment Fund*,
98 N.Y. 2d 249 (2002) ....................10

*Steward v. West*,
2014 U.S. Dist. LEXIS 186012 (C.D. Cal. Aug. 14, 2014) ....................7

*T.B. Harms Co. v. Jem Records, Inc.*,
655 F. Supp. 1575 (D.N.J. 1987) ....................7

*TekVet Techs., Co. v. CrystalTech Web Hosting, Inc.*,
2016 U.S. Dist. LEXIS 55064 (S.D.N.Y. Apr. 25, 2016) ....................8, 9

*Waite v. UMG Recordings, Inc.*,
450 F. Supp. 3d 430 (S.D.N.Y. 2020) ....................6

*Waite v. UMG Recordings, Inc.*,
477 F. Supp. 3d 265 (S.D.N.Y. 2020) ....................5

*We Shall Overcome Found. v. The Richmond Org.*
221 F. Supp. 3d 396 (S.D.N.Y. 2016) ....................6

**Statutes**

17 U.S.C. § 101 ....................4

17 U.S.C. § 102....................7

17 U.S.C. § 114 ....................7, 8

17 U.S.C. § 201 ....................6

17 U.S.C. § 202 ....................10

17 U.S.C. § 410 ....................3

**Treatises**

Corbin on Contracts .................... 3

M. Nimmer & D. Nimmer, *Nimmer on Copyright* ....................2, 4, 8, 10

**Other Authorities**

U.S. Copyright Office Circular 34 (Multiple Works).................... 4

U.S. Copyright Office Circular 56 (Copyright Registration for Sound Recordings) .................... 4

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition papers misinterpret key aspects of the relevant agreements as well as key provisions of the Copyright Act. They claim Plaintiffs made a terminable grant of copyright rights as authors of the Sound Recordings. But they never come to grips with the fact that the entire structure of the parties' contracts is inconsistent with such an arrangement. The relevant agreements are devoid of any language signaling an intention to make a grant, and instead consistently indicate that Next Plateau, UMG's predecessor, was to own the Sound Recordings in its own name from inception as the author thereof. Plaintiffs guaranteed and themselves joined in the representations, warranties and covenants effecting such an arrangement. They cannot now insist on a contrary contractual interpretation in an effort to create a termination right that the Copyright Act does not provide them.

To the extent Plaintiffs try to support their interpretation of a purported "grant" by claiming the Copyright Act does not permit work for hire arrangements as to sound recordings, they are simply wrong. While sound recordings do not have their own category within the statutory work for hire definition, they fall comfortably within the "contribution to a collective work" category where, as here, the works are for inclusion on albums, which the Copyright Office recognizes as a classic example of a collective work.

Plaintiffs' opposition papers similarly confuse other relevant provisions of the Copyright Act. Thus, they claim that whether the Sound Recordings are derivative works cannot be decided on a motion to dismiss because of alleged factual issues. But their argument is based entirely on cases involving musical compositions, not sound recordings, and the key distinctions

[1]References to defined terms herein shall have the same meaning as in UMG's moving papers.

between those two types of works renders their analysis entirely irrelevant. Plaintiffs' arguments on conversion similarly confuse the critical distinction between copyrighted works such as sound recordings and the material objects in which such works are embodied. They thus assume that their service of the Notice allegedly terminating grants of copyright would somehow also serve to obtain ownership of the physical tapes in which such recordings are embodied. But the express language of the Copyright Act renders such an interpretation erroneous. Thus, even if Plaintiffs could somehow prevail on their termination position, it would not change the ownership status of the tapes, which were clearly vested with the record company under the parties' contracts and remain there regardless of what transpires with respect to the copyrights. For all these reasons, the Court should grant UMG's motion to dismiss.

## ARGUMENT

### I. Plaintiffs Cannot Establish the Existence of a Terminable Grant

"Whether a contract transfers copyright ownership is a question of contract law. As with any contractual provision, courts must interpret purported copyright transfer agreements to give effect to the intentions of the parties." *Sanborn Libr. LLC v. Eris Info. Inc.*, No. 19-2049, 2024 U.S. Dist. LEXIS 76134, *21 (S.D.N.Y. Mar. 25, 2024); *see* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A][2] (2025). Moreover, "[w]hen interpreting contracts, it is accepted that separate agreements executed contemporaneously and that are part of a single transaction are to be read together." *Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 413 (S.D.N.Y. 2012) (collecting cases). The NITA Personal Services-Production Agreement and the Next Plateau Distribution Agreement, including the Inducement Letter attached thereto, were executed contemporaneously as part of a single transaction and thus must be read together in ascertaining the parties' intent.

Looking at these agreements as a whole compels the conclusion that there has been no grant of copyright executed by an author. Plaintiffs do not and cannot dispute the venerable tenet of contract law that a purported assignor must have, "in some fashion, manifested an intention to make a present transfer of his rights to the assignee." 9 Corbin on Contracts § 47.7. However, as detailed in UMG's moving papers, the relevant language here lacking any active verbal expression of present execution or language of present transfer is inconsistent with an intention to make a grant. *See* UMG Moving Br. at 12-14. While Plaintiffs seek to brush this argument aside as "hyper-technical" (Pl. Opp. Br. at 8), "the best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Phillies Records, Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565 (2002). Since the parties used express "grant" language elsewhere in their agreement in other contexts, the absence of such language regarding ownership of the Sound Recordings in favor of more typical work made for hire language in the copyright ownership provision is particularly significant. *See* UMG Moving Br. at 8-9, 14.

Plaintiffs seek to avoid that reality by arguing that the Sound Recordings are not works made for hire. *See* Pl. Opp. Br. at 14-17. Although UMG did not move on the work for hire issue *per se*, to the extent the Court considers it relevant to evaluating whether any terminable grant exists, it must be noted that Plaintiffs' work for hire analysis is erroneous.[2] The absence of

[2]Although Plaintiffs contend that UMG bears the burden of proving the Sound Recordings are works made for hire (Pl. Opp. Br. at 12-13), each of the copyright registrations for the Sound Recordings listed in the Notice, FAC Ex. C pp. 8-9, specifically identifies Next Plateau or London Records as the author and owner of the sound recording copyright as "employer for hire." The registrations were timely made under 17 U.S.C. § 410(c), and are thus *prima facie* evidence of the facts stated in the registrations. Plaintiffs bear the burden of rebutting the presumption that Next Plateau or London Records was the legal author and owned the copyrights in the Sound Recordings as works made for hire from the moment of their creation.

a specific "sound recording" category in the § 101(2) work made for hire definition is irrelevant because the Sound Recordings fall within the statutory category of works specially ordered or commissioned for use as contributions to collective works (*i.e.*, albums). The "LP" record albums to be delivered pursuant to the Next Plateau Distribution Agreement (*see* FAC Ex. B ¶¶ 3(a), 1(d)) are quintessential collective works, *i.e.*, "work[s] … in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. *See* U.S. Copyright Office Circular 34 (Multiple Works) at 2 (listing album containing multiple sound recordings as example of collective work); U.S. Copyright Office Circular 56 (Copyright Registration for Sound Recordings) at 5 (multiple sound recordings may be registered "as a 'collective work' if they have been assembled together into a collective whole, such as a digital album or compact disc."). Moreover, the language in the Next Plateau Distribution Agreement that the Sound Recordings would be owned by Next Plateau "from the inception of their creation" with the right to secure the copyright "as the owner and author thereof" (FAC Ex. B ¶ 5) satisfies the statutory requirement of a work for hire agreement. *See*, *e.g.*, *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, 2004 U.S. Dist. LEXIS 15668, at *31 (S.D.N.Y. Aug. 9, 2004); Nimmer, § 5.03.[3]

Beyond the particular language of the NITA Personal Services-Production Agreement concerning copyright ownership, the other provisions of the parties' agreements further confirm the absence of any grant by Plaintiffs. Most notably, the warranties, representations and covenants made by Producer in the Next Plateau Distribution Agreement, <u>and guaranteed and also made by Plaintiffs</u> in the Inducement Letter (FAC Ex. B, ECF No. 30-2 at pp. 23-25),

[3]The Sound Recordings also satisfy the § 101(1) work for hire definition because Plaintiffs' contributions were made within the scope of their employment by Producer, pursuant to a valid personal services agreement. *See* FAC Ex. B ¶ 13(g); ECF No. 1-2 at p. 24.

confirm that the Sound Recordings shall from the inception of their creation be the property of Next Plateau, which shall have the right to secure the sound recording copyright in its name "as the owner and author thereof." FAC Ex. B ¶ 5 (emphasis added).

Plaintiffs' clearly manifested intent at the time they entered into the agreements that Next Plateau would own the Sound Recordings from inception as the "author" cannot be squared with their current attempt to read the agreements as containing grants from them as "authors" of those same works. *See*, *e.g.*, *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009) ("The entire contract must be reviewed and particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby."). And to the extent Plaintiffs could claim that the grants were necessary because the intended work for hire treatment might prove unavailable, they would merely be making the same kind of conditional grant that the Court rejected as inadequate for termination purposes in *Waite II*. *See Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 272 (S.D.N.Y. 2020).

Ironically, Plaintiffs seek to twist the language of the Inducement Letter proving the *absence* of any grant into an alternative basis for finding a grant, which they asserted for the first time in the FAC. Thus, Plaintiffs claim that language in the Inducement Letter whereby they "grant" to Next Plateau the "rights and remedies" granted by Producer to Next Plateau in the Next Plateau Distribution Agreement, was also a grant of copyright rights executed by Plaintiffs as "authors." Plaintiffs' interpretation is untenable, because it would render superfluous, indeed would negate, the rest of the paragraph from which the "grant" language is plucked, as well as much of the Next Plateau Distribution Agreement itself. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (Court must examine entire

contract "to safeguard against adopting an interpretation that would render any individual provision superfluous").

As set forth above, Producer agreed in the Next Plateau Distribution Agreement that Next Plateau would be deemed the author and owner of the Sound Recordings produced under the agreement and entitled to copyright those works in its name.[4] As such an arrangement is decidedly not a grant of copyright rights, Plaintiffs' "grant" in the Inducement Letter of whatever rights Producer granted to Next Plateau cannot be either. Instead, the Inducement Letter simply guaranteed the same covenant made by Producer that Next Plateau was the copyright owner of the Sound Recordings from the inception of creation and in perpetuity, as the author thereof. *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title."). As there is no grant from an author, there is no right of termination. *See Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 441-42 (S.D.N.Y. 2020).

## II. There is No Right to Terminate the Derivative Work Remixes

Relying principally on *We Shall Overcome Found. v. The Richmond Org.*, 221 F. Supp. 3d 396 (S.D.N.Y. 2016), Plaintiffs argue there is an issue of fact as to whether the remixed sound recordings constitute derivative works exempt from the termination statute. However, Plaintiffs' entire argument is an irrelevant detour based on analysis of musical compositions, not sound recordings. "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." *Griffin v. J-Records*, 398 F. Supp. 2d 1137, 1142 (E.D.

[4] With respect to the pre-existing albums covered by the agreement, the sound recordings "shall be deemed to have been recorded in accordance with the terms of this agreement and shall be governed in all respects by the terms and provisions of this agreement." FAC Ex. B ¶ 3(c). In any event, any grant with respect to such works was made by Producer, who also warranted and represented that Producer was the sole and exclusive owner of such works. *Id*.

Wash. 2005); *see also Steward v. West*, 2014 U.S. Dist. LEXIS 186012, at *21 & n. 7 (C.D. Cal. Aug. 14, 2014) ("That the phrases at issue lack sufficient originality as a musical composition, however, does not necessarily mean that sound recordings of those phrases sung, spoken, or otherwise performed in some manner similarly lack originality."); 17 U.S.C. § 102(a) (listing "musical works, including any accompanying words" and "sound recordings" as separate categories of works).

The supposedly "fact intensive analysis" that Plaintiffs claim is necessary in determining whether a musical work is sufficiently original to be a derivative work – allegedly requiring a "highly-detailed, measure-by-measure analysis of music and lyrics" (*see* Pl. Opp. Br. at 18) – has nothing to do with this case. "[T]he rights of an owner of a copyright in a sound recording do not extend to the song itself." *T.B. Harms Co. v. Jem Records, Inc.*, 655 F. Supp. 1575, 1576 n.1 (D.N.J. 1987); *see also BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 627 (E.D. La. 1999) (same); Nimmer § 2.10[A][2] ("[T]he originality that may be claimed in a given musical work cannot, in itself, constitute the originality necessary to support copyright in a sound recording of the musical work."). Because the sound recording copyright protects only the actual sounds, not the underlying musical work, the originality issue is far simpler. *See Griffin*, 398 F. Supp. 2d at 1143 (because "each 'independent fixation' is itself copyrightable, regardless of how similar it sounds to its predecessor fixations, … there are no reported decisions in which the copyrightability of a registered sound recording has been challenged on the grounds of lack of originality.").

"The degree of originality required to create a copyrightable derivative work is low." *Maljack Productions v. UAV Corp.*, 964 F. Supp. 1416, 1426 (C.D. Cal. 1997). In the case of a derivative work sound recording, the only relevant issue is whether the preexisting recorded sounds "have been rearranged, remixed, or otherwise altered in sequence or character." 17

U.S.C. § 114(b). "The Copyright Office accepts alterations such as remixing … as sufficiently original to constitute derivative works." *Maljack Productions*, 964 F. Supp. at 1428; *see also ABS Entm't v. CBS Corp.*, 908 F.3d 405, 417-18 (9th Cir. 2018) (distinguishing between uncopyrightable remastered recordings, which do not alter sounds, and copyrightable remixed recordings, which do); Nimmer § 2.10[A][2][b]; UMG Moving Br. at 18-19.

There is no dispute that a significant number of the Sound Recordings are remixes. *See* FAC ¶ 62(d). Neither the FAC nor Plaintiffs' opposition asserts that such remixes did not alter the sounds of the original recordings (nor could they have made that insertion in good faith). Instead, Plaintiffs simply argue that the remixes "remain [Plaintiffs'] same old songs" (Pl. Opp. Br. at 19) while hiding behind "information and belief" boilerplate allegations as to an alleged lack of originality. But in focusing on the songs (*i.e.*, the musical work), Plaintiffs are not even addressing the relevant legal issue. And the fact that Plaintiffs are not "musicologists" (*id*. at 21) does not deprive them of the necessary knowledge to allege, for example, how the released remixed recording of "Push It," which became a "global phenomenon" and "their first platinum single" (FAC ¶ 60), differed from their original recording. Plaintiffs' failure to make any plausible allegations refuting the presumption of originality provided by the certificates of registration for the remixed derivative Sound Recordings requires that the Court dismiss Plaintiffs' declaratory judgment claim concerning termination of such works.

## III. Plaintiffs Fail to State a Plausible Conversion Claim

Plaintiffs claim that they have stated a valid conversion claim by alleging they are the "true owners" of the Master Tapes. *See* Pl. Opp. Br. at 23 (citing FAC ¶ 99). However, such allegation does not assist Plaintiffs because it is directly contradicted by the relevant agreements attached to Plaintiffs' pleading. *See, e.g.*, *TekVet Techs., Co. v. CrystalTech Web Hosting, Inc.*,

2016 U.S. Dist. LEXIS 55064, at *6 (S.D.N.Y. Apr. 25, 2016); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 69 n.1 (S.D.N.Y. 1988).

Remarkably, Plaintiffs' opposition offers no response to the detailed analysis in UMG's moving brief establishing that Next Plateau, not Plaintiffs, controlled and owned the Master Tapes. *See* UMG Moving Br. at 23-24. The broad language of the NITA Personal Services-Production Agreement initially vested ownership of the Master Tapes with Producer. FAC, Ex. A, ¶ H. The Next Plateau Distribution Agreement in turn obligated Producer to deliver the Master Tapes to Next Plateau (FAC Ex. B ¶ 9(a)), while stipulating that Next Plateau would have control over such property (*id.*) and own it. *Id.* ¶¶ 1(a), 3(c), 5. Plaintiffs guaranteed Producer's performance of such arrangements in the inducement letter (FAC Ex. B (ECF No. 30-2 at pp. 23-25), thereby confirming that they were not the owners of the Master Tapes.

The cases relied on by Plaintiffs in arguing to the contrary are readily distinguishable because the relevant arrangements there left ownership of the tangible objects undisturbed with the plaintiffs. *See*, *e.g.*, *Douglas v. Abrams Child. Books*, 2014 U.S. Dist. LEXIS 201829, at *16 (S.D.N.Y. Sept. 26, 2014) (plaintiff owned the manuscript in question as its sole creator, and defendant had only a limited right of possession for the specific purpose of publication consideration); *Sporn v. MCA Records*, 58 N.Y.2d 482, 485 (1983) (written agreement leased master recording to defendant and alleged oral agreement provided that defendant would return master tape to plaintiff if defendant liquidated its business or withdrew from the record business). Neither of these precedents supports establishing an ownership interest for Plaintiffs when the relevant contracts provide to the contrary.

Nor does Plaintiffs' service of the Notice change this result. Once again, Plaintiffs simply ignore UMG's arguments by pretending that ownership of the material object in which a work is

embodied may be treated interchangeably with ownership of the copyright in such work despite the Copyright Act's express language to the contrary. *See* UMG Moving Br. at 25 (citing 17 U.S.C. § 202); *see also Kembrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 1989 U.S. Dist. LEXIS 11588, at *2 (S.D.N.Y. Oct. 2, 1989). Plaintiffs cite no authority supporting their view,[5] and the governing law makes clear that even if the Notice validly terminated UMG's ownership of the copyright in the Sound Recordings, it would have no impact on ownership of the Master Tapes as material objects in which such works are embodied. *See*, *e.g.*, *Cmty. for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1495 (D.C. Cir. 1988) (material object and copyright do not travel together unless the parties so arrange); Nimmer § 2.10[A][2] ("Clearly, a sound recording copyright vests no proprietary rights in the material object as such.").

Finally, the absence of any demand for return of the Master Tapes in the Notice or elsewhere also dooms Plaintiffs' conversion claim. Plaintiffs' reliance on *State v. Seventh Regiment Fund*, 98 N.Y. 2d 249 (2002), to excuse their demand as futile, is misplaced. That case points to the futility of a demand in circumstances such as "when the defendant is a thief," *id*. at 260, not where, as here, Plaintiffs concede the initial possession was lawful.

---

[5]While Plaintiffs claim that sound recordings are "unique" among all forms of intellectual property (Pl. Opp. Br. at 23 n.18), there is no authority either in the statute or case law for exempting sound recordings from the operation of section 202. And even if Plaintiffs were entitled to some form of access to the Master Tapes in order to exploit the copyrights (rather than working off other copies of the recordings), this would not establish an ownership interest or a superior right of possession sufficient to support conversion.

## CONCLUSION

For the forgoing reasons, and the reasons given in UMG's Moving Brief, UMG respectfully requests that the Court dismiss the FAC with prejudice and stay discovery pending resolution of the motion to dismiss.

Dated: New York, New York
September 19, 2025

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: ______________________________

Richard S. Mandel (rsm@cll.com)
Thomas Kjellberg (txk@cll.com)
Dasha Chestukhin (dxc@cll.com)
114 West 47th Street
New York, New York 10036-1525
(212) 790-9200

*Attorneys for Defendant UMG Recordings, Inc.*

**CERTIFICATE OF WORD COUNT**

Richard S. Mandel, a member of the bar of this Court, hereby certifies pursuant to Local Civil Rule 7.1(c) that the Reply Memorandum of Law in Support of Defendant UMG Recordings, Inc.'s Motion to Dismiss the FAC complies with the word count limitations in Local Civil Rule 7.1(c) and has a final word count of 3,314 words.

RICHARD S. MANDEL